IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WASHINGTON MONTANYA, | § | |
| REG. NO. 99179-179, | § | |
| | § | |
| Petitioner, | § | |
| | § | CIVIL ACTION NO. H-11-3138 |
| v. | § | (Criminal No. H-09-368-02) |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent. | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Defendant-Petitioner Washington Montanya has filed a Motion
Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By
a Person in Federal Custody (Docket Entry No. 239) ("Montanya's
§ 2255 Motion").  Montanya has also filed various supporting
motions:

1.  Motion in Objection to the AUSA's Attempt in Trying
    to Avoid the Rules Governing §2255 in Making a
    Formal Advance on This Court ("Montanya's First
    Supplemental Motion") (Docket Entry No. 242);[1]

2.  Letter Motion ("Montanya's Second Supplemental
    Motion") (Docket Entry No. 244);

---

[1]The relief Montanya seeks in this motion is that the court
"deny the Motion for Affidavits," presumably referring to the
United States' Motion Requesting an Order for an Affidavit from
Defense Counsel, Docket Entry No. 241.  The court granted the
United States' motion on September 30, 2011.  (Order, Docket Entry
No. 246)  Because Montanya includes arguments relevant to his
§ 2255 Motion, the court will treat Montanya's First Supplemental
Motion as a brief in support of Montanya's § 2255 Motion.

3.   Petitioner's Motion in Response to the Government Show Cause Response, the Governments Assertions are Belied by the Record ("Montanya's Third Supplemental Motion") (Docket Entry No. 245);

4.   Petitioner's Motion in Response to the Government's Show Cause Motion ("Montanya's Fourth Supplemental Motion") (Docket Entry No. 256).[2]

The government has filed United States' Response and Motion to Dismiss Movant's Motion Under 28 U.S.C. § 2255 (Docket Entry No. 253) ("United States' Response").   Montanya has also filed a Motion to Recuse (Docket Entry No. 255).   For the reasons stated below, the court will deny Montanya's § 2255 Motion, will deny Montanya's Motion to Recuse, and will grant the United States' Motion to Dismiss.

## I.   Factual and Procedural Background

On October 30, 2009, Montanya pleaded guilty to possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and 18 U.S.C. § 2[3] pursuant to a written plea agreement.[4]   At the rearraignment Montanya admitted that he had committed the acts alleged.[5]   Montanya was represented

_____

[2]All docket entry references are to Criminal No. H-09-368-02.

[3]Transcript of Rearraignment on October 30, 2009, Before the Hon. Sim Lake, United States District Judge ("Rearraignment Tr."), Docket Entry No. 162, p. 28:8-12; Judgment in a Criminal Case, United States v. Montanya, No. 4:09-CR-00386-002, Docket Entry No. 123, p. 1.

[4]Plea Agreement, Docket Entry No. 88.

[5]Rearraignment Tr., Docket Entry No. 162, pp. 27:23-28:3; Indictment, No. 4:09-CR-368, p. 3.

by attorney Gilbert Villarreal before and during the rearraignment.[6]

On October 15, 2009, the United States filed an Information of Prior Conviction "notifying defendant Washington Montanya that the Government intends to seek and rely upon the sentencing enhancements contained in Title 21, United States Code, Section 841 and 851."[7]  The Information made clear that the United States would seek to have Montanya's sentence enhanced based on a 1993 conviction in Harris County, Texas, for the first-degree felony of delivery of cocaine, 200 to 400 grams.[8]

Before pleading guilty Montanya moved to have evidence against him suppressed.  Montanya filed a Motion to Suppress Evidence,[9] which the court denied after hearing evidence on October 8, 2009.[10] After he was sentenced Montanya, now represented by attorney Seth Kretzer, appealed to the Fifth Circuit, challenging the court's

---

[6]Rearraignment Tr., Docket Entry No. 162, p. 3:7-8.

[7]Information of Prior Conviction, Docket Entry No. 70, p. 1.

[8]Id.

[9]Defendant's Corrected/Supplemental Motion to Suppress Request for Pretrial Evidentiary Hearing, and Incorporated Memorandum in Support, Docket Entry No. 53.  Montanya later renewed his Motion to Suppress Evidence.  Defendant's Response to Government's Supplemental Briefing, Docket Entry No. 80.

[10]Memorandum Opinion and Order [October 30, 2009], Docket Entry No. 87; Transcript of Suppression Hearing on October 8, 2009, Before the Hon. Sim Lake, United States District Judge, Docket Entry No. 93, pp. 126:10-128:19.

denial of his motion to suppress evidence seized at his home.  The Fifth Circuit affirmed his conviction.[11]

Montanya now asks the court to "vacate the conviction and judgment," asserting four grounds for relief under 28 U.S.C. § 2255.[12]

## II.  __Applicable Law__

### A.   § 2255 Standard of Review

A prisoner serving a sentence imposed by a federal court claiming

> the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).  If the court concludes that the prisoner's motion is meritorious, it must "vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).

A motion under § 2255 "may not do service for an appeal," however, and a § 2255 petitioner "must clear a significantly higher hurdle than would exist on direct appeal" in order to obtain

_____

[11]Appeal, United States v. Montanya, No. 10-20132 (5th Cir. May 17, 2011) (per curiam), Docket Entry No. 235-1, p. 1; Judgment, United States v. Montanya, No. 10-20132 (5th Cir. May 17, 2011), Docket Entry No. 235.

[12]Montanya's § 2255 Motion, Docket Entry No. 239, pp. 5-14.

relief.  United States v. Frady, 102 S. Ct. 1584, 1593 (1982).
Only two types of claims may be raised in a § 2255 motion.  See
United States v. Cervantes, 132 F.3d 1106, 1109 (5th Cir. 1998).
First, a § 2255 petitioner may raise a constitutional or
jurisdictional claim.  Id.  If, however, the claim could have been
raised on direct appeal, but was not, the petitioner must first
show cause and prejudice.  Id.  Second, a § 2255 petitioner may
assert any other type of claim that could not have been raised on
direct appeal.  Id.  To obtain relief on this second type of claim
the petitioner must show that allowing the asserted error to stand
"would result in a complete miscarriage of justice."  Id.

**B.    Ineffective Assistance of Counsel**

A claim of ineffective assistance of counsel is proper in a
§ 2255 motion because it raises an issue of constitutional
magnitude that cannot generally be resolved on direct appeal.
United States v. Bass, 310 F.3d 321, 325 (5th Cir. 2002).  A
petitioner asserting ineffective assistance of counsel must
demonstrate that (1) counsel's performance was deficient, and
(2) counsel's deficient performance prejudiced the defense.
Strickland v. Washington, 104 S. Ct. 2052, 2064 (1984).  The first
prong of the test requires a showing that "counsel made errors so
serious that counsel was not functioning as the 'counsel'
guaranteed the defendant by the Sixth Amendment."  Id. The court's
review of counsel's performance is extremely deferential; the

"court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 2065.

Under the second prong of Strickland the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Wilkerson v. Collins, 950 F.2d 1054, 1064 (5th Cir. 1992) (quoting Strickland, 104 S. Ct. at 2068). The defendant must "affirmatively prove prejudice." Strickland, 104 S. Ct. at 2067. Even if his attorney made unreasonable errors, the defendant must show that these errors had an actual adverse effect on the defense. Id.

### III. Montanya's First Ground for Relief Under § 2255

### A. Montanya's Claim for Ineffective Assistance of Counsel Regarding Whether His Plea was Voluntary and Intelligent

Montanya argues that he was denied his Sixth Amendment right to counsel because Villarreal allowed him to plead guilty while knowing that Montanya "felt like he was forced" to plead guilty.

> Counsel was constitutionally deficient as counsel due to the fact that counsel allowed the Petitioner to plead guilty. Even though counsel of record knew that there was a conflict of interest. Knowing that petitioner felt like he was forced and had no choice but to plead guilty. Making the plea unknowing [] unintelligent.[13]

Montanya alleges the following facts in support of this claim for ineffective assistance of counsel.

---

[13]Montanya's § 2255 Motion, Docket Entry No. 239, p. 5.

Counsel of record knew how strong petitioner felt about all of the constitutional and unlawful Rule of Law violations that occurred in this case.   But counsel advised and let Petitioner plead guilty anyway.   This created a direct conflict of interest.

The court was well aware of this fact also.  At the plea colloquy the court ask the Petitioner "Are you sure you want to plead guilty"?  This was after the plea was signed.  The Petitioner stated your Honor, I don't have no more choice.  The court stated you have a right to trial.  The Petitioner says I already signed your Honor I am guilty of possession, Sir.  The Court that I accept your plea.  Any reasonable jurist would reason and hold that it is colorable that this plea was not knowingly and intelligently made.[14]

Montanya also argues that the court violated Fed. R. Crim. P. 11 by being involved in plea negotiations and that this violation made his plea unknowing and involuntary.[15]   In particular, Montanya contends that the court forced him to plead guilty by stating that it was time to "fish or cut bait," meaning that it was time either to plead or to go to trial.[16]

---

[14]Id.  Elsewhere, Montanya argues that "Counsel (Villarreal) filed direct motions to withdraw as counsel.  This fact alone gives rise to a Sixth Amendment substantial rights violation in and of itself."  Montanya's First Supplemental Motion, Docket Entry No. 242, p. 1; see also Montanya's Third Supplemental Motion, Docket Entry No. 245, pp. 1-2 ("The Petitioner told counsel repeatedly that he did not feel comfortable pleading guilty.  This is evidenced by the first exchange concerning Mr. Villarreals representation that took place on October 30th, 2009 before the court the Honorable Sim Lake, wherein counsel of record Mr. Villarreal admitted to the court that Petitioner Washington Montanya, told him to with draw as counsel.").

[15]Montanya's Third Supplemental Motion, Docket Entry No. 245, pp. 1-9, 11, 15.  Additionally, Montanya argues that Kretzer was constitutionally ineffective for failing to raise this issue on appeal.  Id. at 13.

[16]Montanya's Fourth Supplemental Motion, Docket Entry No. 256, p. 6.

**B.   Analysis**

The  transcript  of  the  rearraignment  makes  it  clear  that
Montanya's arguments have no merit.  Villarreal sought to withdraw
as  Montanya's  attorney  at  Montanya's  request  for  the  following
reasons:

> [Montanya] did ask me [Villarreal] to withdraw from his
> case, basically saying he didn't think I was representing
> his best interest in this case or working hard enough for
> him.  So, he's asked me, has no trust in my abilities or
> my capacity, believes that, in essence, that because he
> hasn't finished paying his total fees with me, that I'm
> going to bury him and that the whole system is in a hurry
> to just send him away.[17]

The  court  then  held  a  sealed  hearing  and  denied  the  motion  to
withdraw.[18]   Because Montanya contended that Villarreal had not
communicated  the  government's  plea  offers  to  him,  the  court
directed the government to state those plea offers on the record.[19]
The government complied.[20]  The court then summarized those offers
to the defendant and asked whether he wished to accept the plea
offers:

> THE COURT:  All right.  So, as I understand -- and I'm
> certainly not negotiating.  I just want you to understand
> the Government's offer.  The Government has made two
> offers to you.
>
> . . . [The court summarizes the plea offers] . . .
>
> Is that correct, Mr. Johnson [the AUSA]?

---

[17]Rearraignment Tr., Docket Entry No. 162, p. 4:13-19.

[18]<u>Id.</u> at 4:20-25.

[19]<u>Id.</u> at 4:25-5:5.

[20]<u>Id.</u> at 5:6-6:2.

MR. JOHNSON:  Correct, Your Honor.

THE COURT:  Now, those are the two offers.  Do you wish to accept or not accept either of those offers?

THE DEFENDANT:  Excuse me, Your Honor.  I'm seeing that you all are being a little bit unjust with me because you are stating a conspiracy that has never been a conspiracy and you are mentioning some weapons that have never been mine.

THE COURT:  You don't have to accept the Government's plea offer.  I'm just trying to make the record clear that if you choose to go to trial and you are found guilty and you are sentenced to a lengthy period of imprisonment, that you don't then contend that, had you known of the Government's plea offer, you would have chosen to accept the offer instead of going to trial.

. . .

     Now, it's up to you.  Do you wish to accept one of the Government's plea offers or not to accept either offer?

THE DEFENDANT:  I can accept the charge having to do with possession because that is the only thing that is real.

MR. MAGIDSON [AUSA]:  Your Honor, may we have a moment with defense attorney?

THE COURT:  Yeah.  Tell you what, you know, at some point we've got to fish or cut bait.  You're going to come back at 3:20.  At 3:20 is fish or cut bait time.  We're not having any more colloquy.  It's either: I'm going to trial or I'm ready to plead.[21]

When the court came back into session, the government and Montanya

had reached an agreement whereby Montanya would plead guilty to

Count 3 of the Indictment.

THE COURT:  All right.  Mr. Montanya, I understand that you have agreed to plead guilty to Count 3, which charges

---

[21]Id. at 6:3-7:25.

you with possession with intent to distribute 5 kilograms
or more of cocaine.  Is that correct?
(Responding through official interpreter:)

THE DEFENDANT:  Yes, Sir.[22]

Montanya was then placed under oath.[23]  The court stressed that

Montanya must be completely candid with the court during the

rearraignment.

THE COURT:  Now, let me emphasize to you the importance
of providing truthful and complete answers to all of my
questions.  Sometimes after a defendant has been
sentenced, he will file a motion with the Court or will
write me a letter saying that the answers he gave when he
pled guilty were not true or were not complete.  I want
you to understand that I am going to rely both today and
at all times in the future on the answers that you give
me today.  If you should ever tell me something in the
future that is different from what you have told me
today, I will disregard that future statement and rely
only on what you have told me today.  Do you understand
that?

THE DEFENDANT:  Yes, sir.[24]

The court then examined whether Montanya was satisfied with

Villarreal's representation.

THE COURT:  All right.  Has Mr. Villarreal answered all
of your questions?

THE DEFENDANT:  Yes.

THE COURT:  All right.  The Government just furnished me
a copy of a plea agreement.  When did you first receive
the agreement?

---

[22]Id. at 9:1-6.

[23]Id. at 9:7-13.

[24]Id. at 10:18-11:5.

THE DEFENDANT:  When?  Today?

MR. VILLARREAL:  Just for the record, Your Honor, 2:35 I saw him at the marshal's office and started going through it with him.

THE COURT:  Is that correct?

THE DEFENDANT:  Yes, sir.

THE COURT:  Has Mr. Villarreal read the plea agreement to you in Spanish?

THE DEFENDANT:  Yes, sir.

THE COURT:  Has he answered your questions about the agreement?

THE DEFENDANT:  Yes, sir.

THE COURT:  Now, earlier today you told me you were not satisfied with Mr. Villarreal as your lawyer.  Are you getting along now with him?

THE DEFENDANT:  Yes, sir.

THE COURT:  Well, you're smiling.  I don't want you to tell me next month that you entered into this agreement because Mr. Villarreal made you do it.  This must be your decision.  We're ready to go to trial.  You don't have to plead guilty.

     But has Mr. Villarreal answered all of your questions about the agreement?

THE DEFENDANT:  Yes, sir.

THE COURT:  Is there anything that you have asked him to do that he has not done?

THE DEFENDANT:  Having to do with this?

THE COURT:  Or anything about your case.

THE DEFENDANT:  Well, the only thing is that I wanted him to present these documents to you so that you would see the truth about everything, but he refused to turn these documents over to you.

-11-

THE COURT:  What documents are those?

THE DEFENDANT:  The police notes where there are contradictions and the fingerprints that the police falsified.

THE COURT:  Mr. Villarreal, can you explain what he's talking about?[25]

Villarreal then described the various evidence such as expert testimony on fingerprint analysis that Montanya wanted the court to review, but that Villarreal thought was relevant only if there were to be a trial on Montanya's guilt or innocence.[26]

THE COURT:  All right.  Do you have any other criticisms of Mr. Villarreal other than his failure thus far to present that information to the Court?

THE DEFENDANT:  The other is that I was arrested and in Harris County jail for 14 months with my brother, and after 14 months they brought us over here and they arrested Mr. Torres.

. . .

THE COURT:  All right.  What other complaints, if any, do you have against Mr. Villarreal?

THE DEFENDANT:  Well, I explained to him and I told him that the police were lying, that they came into my house without a warrant, three police officers -- one black, one white, and a Chicano -- and they all came in through my garage into my house without a warrant.  I explained all of that to him.

THE COURT:  Well, he's filed motions based on those arguments.  And having heard the evidence, I've ruled against Mr. Villarreal.

Now, your plea agreement preserves your right to seek a higher court review of my decision.  I'm not

---

[25]Id. at 14:2-15:18.

[26]Id. at 15:19-17:9.

always right.   Sometimes the higher courts reverse me.
And if I'm wrong, I will get reversed.   If I'm right, I
will not be reversed.   That's the way the system works.
I don't like to be reversed, but it happens once in a
while.

     All right.   Now, is there anything else that you're
complaining about that Mr. Villarreal hasn't done?   Other
than your fee agreement.   I don't want to hear about the
fee agreement.

THE DEFENDANT:   Well, another thing is I mentioned to
Mr. Torres that I had received a call -- I mean, to
Mr. Villarreal that I received a call from Mr. Torres
that he was going to sell me 20 kilos of drug.   And I had
with me $400,000 that I paid to the two who arrived from
Pasadena, who I think were police officers, and the money
hasn't been seen.[27]

None of Montanya's complaints were relevant to the effectiveness of

Villarreal's representation.   After having examined Villarreal's

effectiveness, the court admonished Montanya that he need not plead

guilty.

[THE COURT:]   All right.   Now, you don't have to plead
guilty.   You have a right to go to trial.   If you went to
trial, you would have the right to the assistance of your
attorney.   You would have the right to see and hear the
Government's witnesses and have your lawyer question
them.   You would have the right to compel other people to
come into court and provide evidence.   You would not be
required to testify. And you could not be convicted
unless the jury unanimously found beyond a reasonable
doubt that you were guilty.

     If you plead guilty today, however, there will not
be a trial and you will give up the right to a trial and
all the protections associated with a trial.   Do you
understand that?

THE DEFENDANT:   Yes, sir.[28]

---

[27]Id. at 17:10-19:9.

[28]Id. at 20:14-21:2.

The court then asked if Montanya felt he was forced to plead
guilty.

> THE COURT:  Has anyone threatened you or forced you to
> plead guilty?

> THE DEFENDANT:  No, Sir.[29]

After the factual basis for the guilty plea was read, Montanya
confirmed that all the facts described were true and he had done
everything described.[30]   The court then asked again how Montanya
pled to Count 3, and Montanya answered "Guilty, Your Honor."[31]   The
court accepted the plea, found that it was knowing and voluntary,
and adjudged Montanya guilty of Count 3.[32]   Montanya then asked to
be heard:

> THE DEFENDANT:  I have a question if you would hear me.

> THE COURT:  Yes.

> THE DEFENDANT:  Before placing my signature on here, I
> want to know if actually I am being judged with rectitude
> and a clean heart.

> THE COURT:  I don't know what you mean by that.

> THE DEFENDANT:  Because this case is full of a lot of
> corruption and lies.

> THE COURT:  Well, I'm not aware of any corruption or lies
> either by the Government or by your lawyer or by any of
> the Government's witnesses I heard. If you think the
> evidence is corrupt or is based on fraud or lies, then

---

[29]Id. at 24:23-25.

[30]Id. at 27:23-28:3.

[31]Id. at 28:8-10.

[32]Id. at 28:13-18.

don't plead guilty.  If you want to change your mind and
withdraw your guilty plea, tell me now because we're
ready to go to trial Monday.

THE DEFENDANT:  I want to say I'm guilty, Your Honor.
The only thing I ask is that you have mercy.

THE COURT: Well, this is not the time for that.  Are you
sure you want to plead guilty?

THE DEFENDANT:  (English) Your Honor, I don't have no
more choice.

THE COURT:  You have a right to go to trial.  I don't
want you telling me next year that you really wanted to
go to trial.  If you want to go to trial, you tell me
now.

THE DEFENDANT:  I already signed, Your Honor.  I am
guilty of the possession, sir.

THE COURT: All right.  Then I accept your plea.[33]

A defendant's plea must be voluntary and intelligent.  Matthew
v. Johnson, 201 F.3d 353, 364 (5th Cir. 2000).  The above-cited
portions of the transcript make clear that Montanya's plea was made
voluntarily and intelligently.  The court carefully probed each of
his contentions regarding his attorney and the evidence, and
repeatedly asked him to confirm that he did indeed wish to plead
guilty.  Montanya specifically stated that he had not been forced
to plead guilty.  The court clearly informed him of his right to go
to trial.  The fact that the court summarized the government's plea
offers does not mean that the court was involved in plea
negotiations; the transcript quoted above makes it clear that the
court was not.  The fact that the court was keeping firm to the

---

[33]Id. at 28:21-29:23.

-15-

trial date, and that Montanya had to choose between going to trial and pleading guilty, does not mean that the court forced Montanya to plead guilty.  Montanya's first ground for § 2255 relief has no merit.

### IV.  Montanya's Second Ground for Relief Under § 2255

### A.  Montanya's Claim for Ineffective Assistance of Counsel Regarding the Motion to Suppress

Montanya argues that he was denied his right to counsel because Villarreal was "deficient" in drafting the Motion to Suppress.

> Officers with years of experience subjected Petitioner and his wife at gun point to a warrantless search against the constitutions prohibitions against unreasonable searches and seizures.  Counsel of record was deficient as counsel as to how the suppression was drafted.[34]

Montanya alleges the following facts in support of this ineffective assistance of counsel claim.

> This issue of the suppression motion was raised on direct appeal.  The cause prong is satisfied because Petitioner properly raised objections at the district court and on direct Appeal to the constitutional violation of the Fourth Amendment prohibition against unreasonable searches and siezures.  The "Actual prejudice" prong is satisfied because the actions of the officers produced fruits of a illegal search by not securing a valid legal search warrant.  Without these fruits of the illegal

---

[34]Montanya's § 2255 Motion, Docket Entry No. 239, p. 6. Elsewhere, Montanya claims that both trial and appellate counsel were ineffective "for not raising the issue [of the warrantless search and seizure]" and "for not properly drafting the suppression motion and appeal . . . to include the Fifth Amendment due process violation."  Montanya's Third Supplemental Motion, Docket Entry No. 245, pp. 18 & 21.

-16-

search there would be no conviction in this case this is the prejudice.[35]

Montanya alleges that this issue was never properly argued to either the court or the Fifth Circuit.

> The Petitioner avers that in placing the issues up front as to the suppression issue already being decided on direct appeal, the trial court is barred from reconsidering or modifying any of its prior decisions that have been ruled on by the Court of Appeals.

> The Petitioner asserts that of course there is a corollary to this rule -- if an issue was not part of the appellate decision, a trial court may consider the matter.

> The issue of both District Court and Appeals counsel being deficient as counsels for not congruently incorporating the Fifth Amendment suppression motion challenge and appeal from same was never placed before the District Court or the Court of Appeals and decided on the merits.  Therefore the District Court can consider the matter.[36]

## B.   Analysis

The language of Montanya's claim quoted above demonstrates that Montanya uses this ineffective assistance of counsel claim to challenge the admission of the evidence seized at his home.  Both this court and the Fifth Circuit have already rejected Montanya's motion to suppress this evidence.  This issue may not be considered on collateral review because "issues raised and disposed of in a

---

[35]Montanya's § 2255 Motion, Docket Entry No. 239, p. 6.

[36]Montanya's Third Supplemental Motion, Docket Entry No. 245, pp. 25-26.

previous appeal from an original judgment of conviction are not considered in § 2255 Motions." <u>United States v. Kalish</u>, 780 F.2d 506, 508 (5th Cir. 1986).  It is of no importance that Montanya now recharacterizes his claim that the evidence was improperly admitted as one for ineffective assistance of counsel.  Insofar as Montanya's ineffective assistance of counsel claim is premised on the proposition that the evidence should have been suppressed under the Fourth Amendment, this claim has been adjudicated and should not be considered in the context of Montanya's § 2255 Motion.

Montanya also faults Villarreal and Kretzer for failing to raise a Fifth Amendment challenge to the admissibility of the seized evidence.  Both this court and the Fifth Circuit analyzed only whether the Fourth Amendment provided a ground for the suppression of the evidence.  But even if Montanya's Fifth Amendment argument were now considered, Montanya has not articulated any plausible theory of why the evidence should have been suppressed under the Fifth Amendment.  Montanya has therefore not shown that Villarreal or Kretzer were deficient for not including a Fifth Amendment argument or that Montanya was prejudiced by the lack of a Fifth Amendment argument.  The court therefore concludes that Montanya's claim for ineffective assistance of counsel regarding the suppression motion is without merit.

### V.   Montanya's Third Ground for Relief Under § 2255

**A.   Montanya's Claim for Ineffective Assistance of Counsel Regarding the Deportation Consequences of His Guilty Plea**

Montanya alleges that he was denied his Sixth Amendment right to counsel because Villarreal did not warn him of the deportation consequences of his guilty plea.

> Counsel of record was constitutionally deficient as counsel for not advising Petitioner of the fact that if he pled guilty that he would be deported.  The Rule of Law concerning this issue was available to counsel of record on appeal.[37]

Montanya alleges the following facts in support of his claim for ineffective assistance of counsel regarding the deportation issue.

> A "constitutional competent counsel" must advise their criminal-defendant clients if a conviction would "subject [them] to automatic deportation," and the client may bring a claim of ineffective assistance for his counsels failure to provide such advice.
>
> Deficient performance of counsel is a § 2255 issue. This court can apply the Rule of Law in this case under the tolling clause of § 2255(F)(3).[38]

Montanya states in his affidavit that Villarreal did not advise him of the deportation consequences of his guilty plea.[39]  Montanya alleges that "[h]e would not have pled guilty had he been correctly advised of [the] near certainty [of mandatory removal from the

---

[37]Montanya's § 2255 Motion, Docket Entry No. 239, p. 8.

[38]Id.

[39]Affidavit Under Penalty of Perjury, Docket Entry No. 254, p. 1.

United States]."[40]   Montanya acknowledges that the court warned him
of the deportation consequences of his guilty plea when it stated
that "'[s]upervision will become inactive when you are deported,'"[41]
but argues that the "mention of the word deported by the Court does
not qualify."[42]

## B.   Analysis

The court need not determine whether Villarreal actually
informed Montanya that he would be deported following conviction
because the transcript of the rearraignment establishes that the
court informed Montanya that he would be deported.   The court
stated that "[s]ince you are here illegally, you will also be
deported after you've served your sentence."[43]   To establish
prejudice Montanya must prove that (1) but for his counsel's error,
he would not have pled guilty but would have insisted upon going to
trial.   Armstead v. Scott, 37 F.3d 202, 207 (5th Cir. 1994).
Because Montanya was informed of the deportation consequences of
his guilty plea by the court, Montanya could not have been
prejudiced by any alleged failure of Villarreal in this regard.
Montanya's claim for ineffective assistance of counsel regarding

---

[40]Montanya's Third Supplemental Motion, Docket Entry No. 245,
p. 28.

[41]Id. at 29 (quoting the transcript).

[42]Id.

[43]Rearraignment Tr., Docket Entry No. 162, p. 22:3-4.

the deportation consequences of conviction is therefore without merit.

### VI.   **<u>Montanya's Fourth Ground for Relief Under § 2255</u>**

**A.   Montanya's Claim That His Right to a Jury Trial was Violated By the § 851 Sentence Enhancement**

Montanya alleges that his right to a trial by jury was violated when the court imposed a sentence enhancement under 21 U.S.C. §§ 841 and 851 for a prior drug felony conviction.

> Petitioner's right to a jury trial was violated when the sentence was enhanced 10 extra years under a § 851 enhancement without proof beyon a reasonable doubt. Counsel at trial Gilbert Villareal and Counsel on Appeal were deficient as counsels for not making jury trial objections.[44]

As the final sentence quoted above makes clear, embedded within the jury trial claim are two ineffective assistance of counsel claims: Montanya argues that Villarreal was ineffective for not objecting to the enhancement and that Kretzer was ineffective for not arguing on appeal that the enhancement was improper.

Montanya alleges the following facts in support of these claims.

> If the Legislature defines some core crime and the[n] provides for increasing the punishment of that crime upon a finding of some aggravating factor — of whatever sort, including the fact of a prior conviction — the core crime upon and the aggravating fact together constitute an aggravating aggravated crime, just as much as grand Larceny is a aggravated form of petit Larceny.  The aggravating fact is an element of the aggravated crime.

---

[44]Montanya's § 2255 Motion, Docket Entry No. 239, p. 9.

-21-

One need only look to the kind, degree, or range of punishment to which the prosecution is by Law entitled for a given set of facts.  Each fact necessary for that entitlement is an element.  Petitioner had a guaranteed right for counsels to raise the jury trial objection.[45]

Elsewhere, Montanya argues that

Alemendarez-Torres is gravely wounded and when the proper issue and case rises through the Appellate process, the Supreme Court has stated that they would revisit and overrule Alemendarez-Torres.  Montanya has a right to raise this issue through the Appellate process, that starts with the collateral attack under deficient performance of counsel.  The statute §851, by itself, changes the core crime of §841 and creates a whole new crime and punishment that the Grand Jury indictment does not authorize.[46]

## B.   Analysis

The Fifth Circuit has characterized as "non-debatable" an argument apparently identical to Montanya's.  United States v. Pineda-Arrellano, 492 F.3d 624, 626 (5th Cir. 2007).

[Defendant-appellant] makes the familiar contention that Almendarez-Torres v. United States . . . was incorrectly decided and that a majority of the Supreme Court would overrule it in light of the subsequent decision in Apprendi.  We have repeatedly rejected such arguments on the basis that Almendarez-Torres remains binding precedent until and unless it is officially overruled by the Supreme Court. . . .

This court has patiently entertained the identical argument in countless cases.  Now, however, a majority of the Supreme Court has reaffirmed Almendarez-Torres in

_____

[45]Id. (quoting without citing, Apprendi v. New Jersey, 120 S. Ct. 2348, 2368-69 (2000)).

[46]Montanya's First Supplemental Motion, Docket Entry No. 242, p. 2.

-22-

> *James v. United States*, [127 S. Ct. 1586 (2007)], stating
> that "we have held that prior convictions need not be
> treated as an element of the offense for Sixth Amendment
> purposes." *Id.* at 1600 n. 8 (citing *Almendarez-Torres*).
> Because the Supreme Court treats *Almendarez-Torres* as
> binding precedent, [defendant-appellant's] argument is
> fully foreclosed from further debate.

Id. at 625.  Montanya's argument that the Sixth Amendment to the

Constitution entitles him to have the fact of his prior conviction

tried to a jury and proven beyond a reasonable doubt is therefore

meritless.  And because Montanya has not established even the

potential viability of his argument, he has not shown that

Villarreal and Kretzer were deficient for not including such an

argument in their briefing or that this caused him prejudice.

Montanya's ineffective assistance of counsel claims in this regard

are therefore also without merit.

## VII.  **Montanya's Request for an Evidentiary Hearing**

Montanya has requested an evidentiary hearing.[47]  Because the

record conclusively shows that Montanya is not entitled to relief,

the court will deny Montanya's request for an evidentiary hearing.

See 28 U.S.C. § 2255(b).

## VIII.  **Montanya's Motion to Recuse**

Montanya asks the court to recuse itself under 28 U.S.C.

§ 455(b)(1).[48]  Montanya argues that the court exhibited bias at the

_____

[47]Montanya's Second Supplemental Motion, Docket Entry No. 244,
p. 2.

[48]Motion to Recuse, Docket Entry No. 255.

rearraignment, specifically by becoming involved in plea negotiations, and in the substance of the Scheduling Order issued on August 29, 2011.[49]   The Scheduling Order contains the following paragraph:

> Defendant is notified that pursuant to 28 U.S.C. § 1932, a court may order the revocation of earned good-time credit under 18 U.S.C. § 3624(b), the court finds that the defendant's claim was filed for a malicious purpose, that the claim was filed solely to harass the party against which it was filed, or if the defendant testifies falsely or otherwise knowingly presents false evidence or information to the court.   If defendant wishes to withdraw his § 2255 motion, defendant shall notify the court.[50]

Montanya has also filed an affidavit in support of his arguments for recusal.[51]

A party may ask a judge to recuse himself "[w]here he has a personal bias or prejudice concerning a party," under 28 U.S.C. § 455(b)(1), or where "his impartiality might reasonably be questioned," under 28 U.S.C. § 455(a).   The standard for bias is objective, not subjective, using the perspective of "the well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person."   Andrade v. Chojnacki, 338 F.3d 448, 454-55 (5th Cir. 2003) (internal citations omitted).   Under this standard a reviewing court considers "the entire course of judicial proceedings, rather than isolated

---

[49]Id. at 3.

[50]Scheduling Order, Docket Entry No. 240, p. 2.

[51]Affidavit Under Penalty of Perjury, Docket Entry No. 254.

incidents." Id. at 455.  Finally, where there is no question of a
bias having an extrajudicial source, recusal is rarely warranted,
as the Supreme Court has stated:

> First, judicial rulings alone almost never constitute a
> valid basis for a bias or partiality motion.  In and of
> themselves (i.e., apart from surrounding comments or
> accompanying opinion), they cannot possibly show reliance
> upon an extrajudicial source; and can only in the rarest
> circumstances evidence the degree of favoritism or
> antagonism required (as discussed below) when no
> extrajudicial source is involved.  Almost invariably,
> they are proper grounds for appeal, not for recusal.
> Second, opinions formed by the judge on the basis of
> facts introduced or events occurring in the course of the
> current proceedings, or of prior proceedings, do not
> constitute a basis for a bias or partiality motion unless
> they display a deep-seated favoritism or antagonism that
> would make fair judgment impossible.  Thus, judicial
> remarks during the course of a trial that are critical or
> disapproving of, or even hostile to, counsel, the
> parties, or their cases, ordinarily do not support a bias
> or partiality challenge.  They may do so if they reveal
> an opinion that derives from an extrajudicial source; and
> they will do so if they reveal such a high degree of
> favoritism or antagonism as to make fair judgment
> impossible.

Liteky v. United States, 114 S. Ct. 1147, 1157 (1994) (quoted in,
Andrade, 338 F.3d at 455) (internal citations omitted).

Montanya alleges no extrajudicial source for the alleged bias
he attributes to the court.  Montanya has cited no evidence that
the court has exhibited such a high degree of favoritism or
antagonism as to make fair judgment impossible.  Montanya's
complaints concerning the process of the rearraignment are not a
basis for recusal, even if they were a basis for appeal or
collateral attack.  The court's notification quoted above in the
Scheduling Order is an instance of careful warning, not antagonism.

-25-

The court concludes that Montanya's Motion to Recuse is without merit.

### IX.  Conclusion and Order

For the reasons explained above, the court concludes that Washington Montanya has not established that he is entitled to relief on any of the grounds he alleges.  Accordingly, Montanya's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Docket Entry No. 239) is **DENIED**.  Because Montanya's four other motions are properly considered briefs in support of Montanya's § 2255 Motion, the court also now **DENIES** the following:

1.  Motion in Objection to the AUSA's Attempt in Trying to Avoid the Rules Governing §2255 in Making a Formal Advance on This Court (Docket Entry No. 242);

2.  Letter Motion (Docket Entry No. 244);

3.  Petitioner's Motion in Response to the Government Show Cause Response, the Governments Assertions are Belied by the Record (Docket Entry No. 245); and

4.  Petitioner's Motion in Response to the Government's Show Cause Motion (Docket Entry No. 256).

The United States' Response and Motion to Dismiss Movant's Motion Under 28 U.S.C. § 2255 (Docket Entry No. 253) is **GRANTED**.

Montanya's Motion to Recuse (Docket Entry No. 255) is **DENIED.**

**SIGNED** at Houston, Texas, on this the 17th day of July, 2012.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE